UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:24-CV-00677-CRS-CHL

**MICHAEL M.,[1]**  **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**  **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff, Michael M. ("Claimant").  Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner").  (DN 1.)  This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation.  (DN 12.)  Claimant filed an opening brief, and the Commissioner filed a Fact and Law Summary.[2]  (DNs 15, 17.)  Claimant did not file a reply, and his time to do so has expired.  (DN 12.)  Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

**I.  FINDINGS OF FACT**

On or about March 2, 2021, Claimant filed an application for disability insurance benefits under Title II ("DIB").  (R. at 18, 89-90, 96-97, 261-62.)  His application alleged disability beginning on January 27, 2021, due to three fused discs in his neck, lordosis of his lower back,

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.
[2] Claimant did not file a completed Fact and Law Summary form as required by the Court's Social Security Order. (DN 12.)  Claimant's counsel is instructed to carefully review and comply with the Court's Social Security Order in future cases.

and a spinal injury. (*Id*. at 18, 90, 97, 280.) Claimant's applications were denied initially and again on reconsideration. (*Id.* at 104-08, 124-33.)

At Claimant's request, Administrative Law Judge ("ALJ") Amber Downs ("the ALJ") conducted a hearing on Claimant's application on September 7, 2023. (*Id.* at 53-88, 140-41.) Claimant and his counsel appeared by telephone. (*Id*. at 55.) An impartial vocational expert also participated in the hearing. (*Id*.) During the hearing, Claimant's attorney summarized that Claimant is a veteran who served in the U.S. Marine Corps from 2004 to 2016 and thereafter worked in the private sector. (*Id.* at 59.) Claimant then testified to the following. He is currently attending college and studying social work and tries to limit his driving to driving to campus twice a week. (*Id.* at 61, 74.) The trip takes twenty to twenty-five minutes depending on traffic and even sitting still that long is difficult after ten minutes. (*Id.* at 61-62.) During his two-and-a-half hour classes, he has to alternate between sitting and standing. (*Id.* at 62.) After class and the drive home, he has stiffness in his neck and back and has to go straight to his room to lie down for fifteen to twenty minutes. (*Id.*) He was injured while he was working at Louisville Paving as a heavy equipment operator and a laborer when the bucket of a track hoe pushed him into a ditch. (*Id.* at 64-66.) He didn't return to work after the accident. (*Id.* at 66.) He had surgery that resulted in a fused disc. (*Id.*) Since then, he has issues with his neck including a hard time looking left or right, up and down, and raising his arms above his head. (*Id.*) His neck is constantly extremely stiff, it feels "like there's a knife stuck in [his] spine," and he gets spikes of pain sometimes. (*Id.*) He also has issues with his lower back that prevent him from sitting or standing too long. (*Id.* at 67.) He has pain that radiates down his left leg into his foot that never stops and is distracting. (*Id.*) He has good days and bad days with his pain, and the bad days happen on average once or twice a week. (*Id.*) On a bad day, he has to stay in his reclining bed. (*Id.*) He has a walker that he can

2

sit on that he uses when he goes someplace where he will be standing for an extended period. (*Id.*) He estimates he could only sit at a desk for ten to fifteen minutes before he would have to get up and move around. (*Id.* at 68.) He estimates he can stand for fifteen to twenty-five minutes and walk for ten to twenty minutes before he would have to take a break. (*Id.*) He does not believe he could perform repetitive lifting of an eight-pound object four to six times an hour every hour for an eight-hour workday. (*Id.* at 68-69.) He has trouble with stairs and would have difficulty going up and down more than one or two times in a row. (*Id.* at 69.) He tries to help his wife with housework but often has to stop. (*Id.* at 70.) He can get himself dressed though he sometimes needs help with his socks and shoes. (*Id.* at 71.) He can typically take a shower but sometimes needs help getting in and out of the shower or when he has trouble with his arms. (*Id.*) He stopped going to counseling for his anxiety because he wasn't seeing eye-to-eye with his counselor. (*Id.* at 73.) He still takes medication for his mental health that is prescribed by his primary care physician. (*Id.* at 75.) His anxiety isn't gone, and he still has trouble with having his back to the door, crowds, and being able to see an exit. (*Id.* at 73.) He has trouble maintaining relationships. (*Id.* at 74.)

The ALJ issued an unfavorable decision on January 24, 2024. (*Id*. at 15-38.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, Claimant had not engaged in substantial gainful activity since January 27, 2021, the alleged onset date. (*Id*. at. 20.) Second, Claimant's spine disorders were severe impairments. (*Id*.) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id*. at 23.) Fourth, Claimant had the residual functional capacity ("RFC") to perform less than a full range of light work:

> The claimant can lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently; sit for up to six hours, stand for up to six hours, and walk for up to six hours; and can occasionally operate foot controls with left foot. In addition, the claimant can frequently perform overhead reaching bilaterally, and can frequently reach in all other directions bilaterally. The claimant can also occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently balance[]; and occasionally stoop, kneel, crouch, or crawl. Furthermore, the claimant can frequently work in environments of unprotected heights, moving mechanical parts, or vibration. Additionally, the claimant can frequently perform extension, rotation, and flexion of the neck, and requires an option to alternate position between sitting and standing in intervals of 30 minutes.

(*Id*. at 24.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id*. at 31.) The ALJ concluded Claimant had not been under a disability, as defined in the Social Security Act, from January 27, 2021, through the date of her decision. (*Id*. at 33.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on September 19, 2024. (*Id.* at 4-9, 257-60.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2025); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on November 19, 2024. (DN 1.)

## II.    CONCLUSIONS OF LAW

The Social Security Act authorizes payments of DIB to persons with disabilities. *See* 42 U.S.C. §§ 401-434. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2025).

4

### A.  Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.  Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled.  20 C.F.R. § 404.1520 (2025).  In summary, the evaluation process proceeds as follows:

(1)  Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)  Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[3] and

---

[3] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1509 (2025).

5

        significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)     Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)     Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)     Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

    **C.**     **Claimant's Contentions**

Claimant challenged the ALJ's assessment of his RFC. First, Claimant argued that the ALJ's analysis of the opinions of the state agency medical consultants did not comport with 20 C.F.R. § 404.1520c. (DN 15, at PageID # 1717-18.) Second, Claimant argued that the ALJ's RFC determination was not based upon substantial evidence because the ALJ "interpret[ed] the raw data of a lumbar spine MRI into a functional assessment absent any medical interpretation." (*Id.* at 1717, 1719-22.) The undersigned will address each of Claimant's arguments below.

6

### 1. Opinion Evidence

Claimant argued that the ALJ erred in his assessment of the opinion evidence of record from the state agency medical consultants. (*Id.* at 1717-18.) The applicable regulations set forth specific rules an ALJ must follow with regard to opinion evidence. Pursuant to 20 C.F.R. § 404.1520c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[4] 20 C.F.R. § 404.1520c(a) (2025). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[5] specialization, and other factors.[6] 20 C.F.R. § 404.1520c(b)(1)-(2). Where two medical opinions reach different conclusions but are "equally well-supported . . . and

---

[4] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. § 404.1527(c)(2) (2025).

[5] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3).

[6] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5).

7

consistent with the record," an ALJ is required to state how he or she considered the other "most persuasive" factors in making his or her decision. 20 C.F.R. § 404.1520c(b)(3).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. § 404.1520c(b). *But see Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287, at *1 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations

8

do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Claimant argued that the ALJ did not comply with the applicable regulations because her analysis amounted to a "single conclusory sentence" that "was so vague as to be meaningless." (DN 15, at PageID # 1717-18.)  In her decision, the ALJ stated that she found the opinions of the state agency medical consultants Drs. Donna Farmer, M.D., ("Dr. Farmer") and Stephen Spanbauer, M.D., ("Dr. Spanbauer") "persuasive overall."  (R. at 29.)  The ALJ noted that Drs. Farmer and Spanbauer reviewed the record, diagnosed Claimant with spinal disorders, and found Claimant had the RFC to perform a range of light work.  (*Id.*)  On initial review, Dr. Farmer found Claimant could lift and carry twenty pounds occasionally and ten pounds frequently; push and pull with his upper and lower extremities without limitation; stand, walk, and sit for six hours in an eight-hour workday; occasionally climb ramps and stairs, stoop, kneel, crawl, and crouch; balance without limitation; and could not climb ladders, ropes, or scaffolds.  (*Id.* at 92-93.)  She opined that Claimant should avoid concentrated exposure to vibrations and hazards such as machinery or heights.  (*Id.* at 93.)  She indicated that her opinion was based on Claimant's history of "cervical spine fusion" and "lumbar spine degeneration," citing to a February 11, 2021, MRI that showed degenerative changes and loss of disc height in his cervical spine and degenerative changes associated with disc bulges in his lumbar spine; she also cited Claimant's March 9, 2021, post-surgery records.  (*Id.*)  On reconsideration, Dr. Spanbauer reaffirmed Dr. Farmer's articulation of Claimant's RFC, again citing Claimant's history of "cervical spine fusion" and "lumbar spine degeneration."  (*Id.* at 100-01.)  Dr. Spanbauer also cited the February 2021 MRI results and post-surgery records, stating "C spine MRI shows degen changes and degen discs. Fusion C3-4."  (*Id.* at 102.)  The ALJ found that the opinions of Drs. Farmer and Spanbauer "were generally supported

9

by their own review noting cervical spinal fusion and lumbar degeneration[] and were consistent with the detailed longitudinal record." (*Id.* at 29.) The undersigned disagrees with Claimant that this summation was so conclusory as to be meaningless when considered in the context of the ALJ's overall opinion. The ALJ's RFC largely echoed the opinions of Dr. Farmer and Dr. Spanbauer except that the ALJ imposed greater restrictions on Claimant's ability to operate foot controls, reach, balance, and perform extension/rotation/flexion of his neck; the ALJ also found that Claimant needed an option to alternate positions between standing and sitting in intervals of thirty minutes. (*Id.* at 24.) The ALJ's RFC finding included discussion of medical records post-dating the review of Drs. Farmer and Spanbauer to support these additional limitations. Thus, her statement as to the persuasiveness of those opinions must be read in the context of the ALJ's overall review of the record, and when read as such, the statement is not conclusory.

Claimant also criticized the ALJ for not noting that the state agency medical consultants' opinions "cited practically no evidence and very tersely cited only two exhibits out of the entirety of the record." (DN 15, at PageID # 1718.) But Claimant's argument more reflects Claimant's disagreement with the overall RFC espoused by both the ALJ and the state agency medical consultants. Claimant does not appear to dispute that his spinal impairments would support reduced functioning; indeed, he contends that he is more limited than either the ALJ or the state agency medical consultants opined. The undersigned finds Claimant's criticism therefore not to reflect any error in the ALJ's persuasiveness analysis and instead to be reflective of the Claimant's overall disagreement with the ALJ's determination of his RFC, relying in part on the state agency medical consultants' opinions. This disagreement does not control whether the ALJ's discussion comported with the regulatory articulation requirements of 20 C.F.R. § 404.1520c.

10

Further, even if Claimant could prove there was any error, the undersigned finds that she was not harmed given that the ALJ included greater limitations in her RFC than that espoused by the state agency medical consultants. Numerous cases within this Circuit have noted that claimants do not suffer prejudice when an ALJ adopts a more restrictive RFC than an expert recommended. *See, e.g.*, *Lee M. v. Bisignano*, No. 3:24-CV-00615-RSE, 2025 WL 2164548, at *5 (W.D. Ky. July 30, 2025) (collecting cases).

Accordingly, the undersigned finds no error in the ALJ's compliance with 20 C.F.R. § 404.1520c and analysis of the state agency medical consultants' opinions; the ALJ's discussion was sufficient to comport with the regulation's requirements.

### 2.  RFC Not Based Upon Medical Opinion

Claimant also argued that the ALJ's RFC was not supported by substantial evidence because she "interpret[ed] the raw data of a lumbar spine MRI into a functional assessment absent any medical interpretation." (DN 15, at PageID # 1717, 1719-22.) He argued that medical records post-dating the review of the state agency medical consultants showed "significant worsening of [Claimant]'s lumbar spine impairment," citing the results of a July 2023 MRI, and that that worsening was not accounted for in either the ALJ's RFC finding or her discussion of the same. (*Id.* at 1719.) He also argued that it was unclear why the ALJ rejected Claimant's testimony regarding his ability to sit and stand. (*Id.* at 1722.)

As noted above, the ALJ found the opinions of the state agency medical consultants persuasive and largely adopted their opinions though she imposed greater limitations in certain functional areas. (R. at 24, 29.) In her RFC analysis, the ALJ summarized Claimant's testimony, including his testimony during the hearing that he could only sit for ten to fifteen minutes at a time and stand for fifteen to twenty-five minutes at a time before he would have to change position.

(*Id.* at 25-26.) However, the ALJ found that the Claimant's statements about his symptoms were "internally inconsistent and somewhat unsupported by the reported information" regarding his activities, citing several function reports in the record. (*Id.* at 26.) The ALJ also noted that Claimant's statements were "not fully supported by the medical record." (*Id.*) The ALJ summarized the medical evidence of record, including Claimant's "history of chronic moderate neck pain since 2016[ ] [and] L1-L2 disc herniation with moderate to severe canal stenosis since 2018." (*Id.*) The ALJ noted that Claimant had previously had several neck surgeries prior to his 2021 work injury, after which he had another surgery: a C5-C7 anterior cervical discectomy and fusion. (*Id.* at 26-27.) The ALJ summarized the results of Claimant's March 2021 cervical MRI, May 2023 lumbar MRI, and July 2023 lumbar MRI. (*Id.* at 27.) She noted in particular that 2023 "diagnostic imaging confirmed L4-L5 degenerative disc disease with left subarticular stenosis mildly worse than in 2021." (*Id.*) Ultimately, the ALJ concluded that notwithstanding his own testimony,

> the available evidence show[ed] that the [C]laimant's symptoms [we]re adequately controlled with both conservative and over the counter medication, that he is able to ambulate effectively at a reduced level of exertion without an assistive device, and that he is able to function adequately in routine activities of daily living with occasional and/or little assistance.

(*Id.* at 30.)

Claimant criticized the ALJ's discussion, arguing that the ALJ did not sufficiently address the worsening of Claimant's symptoms following the state agency medical consultants' review. Claimant argued that given this worsening and the lack of any medical opinion evidence interpreting the evidence of it, the ALJ improperly interpreted raw medical in functional terms. The undersigned disagrees for multiple reasons.

12

First, as noted by the Commissioner, the ALJ's reading of the relevant imaging studies was based on the interpretation of the same by the radiologist not the ALJ's own assessment of the images. The Sixth Circuit has expressly found this to be permissible. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) ("Furthermore, the ALJ did not interpret raw medical data beyond her ability. The x-rays of Rudd's hands and lumbar spine, which were the only raw medical data, had already been read and interpreted by a radiologist."). Thus, it was not error for the ALJ to rely on the recent MRI results notwithstanding the fact that there was no opinion evidence in the record about them.

Second, Claimant's argument is tantamount to the position that an ALJ's RFC must be based on a medical opinion. This too the Sixth Circuit has rejected. *See id.* ("The ALJ was not required to obtain a medical expert to interpret the medical evidence related to [claimant's] physical impairments."); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) (recognizing that there is no authority to support the proposition "that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered"). Instead, the determination of a claimant's RFC is left to the ALJ. 20 C.F.R. § 404.1546(c) (2025); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). As such, an ALJ does not improperly assume the role of a medical expert, or "play doctor," by weighing the medical and non-medical evidence before rendering an RFC finding. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)).

Here, as summarized above, the ALJ recounted Claimant's testimony and the relevant medical evidence before articulating an RFC that was more restrictive than that of any of the opinion evidence of record. While Claimant's brief criticizes the ALJ's decision and the decision of the state agency medical consultants, absent from the brief is a detailed discussion supporting

13

that greater restrictions were required. For example, Claimant argued that the ALJ should have adopted his testimony about his ability to sit and stand, but the ALJ specifically rejected this testimony, citing it and including a different sit-stand option in Claimant's RFC. In large measure, the medical records cited by Claimant in his brief were cited by the ALJ in her decision, and based upon them and the other evidence cited in the decision—e.g. the adequate control of Claimant's symptoms with over the counter medications and conservative treatment and effective ability to ambulate—the ALJ reached a different conclusion than the one Claimant proffers. Thus, the undersigned finds that the ALJ acknowledged the worsening of Claimant's symptoms in her recitation of the medical evidence and accommodated for the same in her RFC finding. Claimant did nothing more than point to other evidence in the record he claimed supported an opposite conclusion to that reached by the ALJ. However, having found that his decision was supported by substantial evidence, this Court's role is not to second-guess the ALJ's conclusions. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

For these reasons, the undersigned finds Claimant's arguments to be without merit.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

January 20, 2026

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).